## THE PEOPLE OF THE STATE OF NEW YORK v. THE WALL STREET BANK.

(In the Matter of the Petition of the RECEIVER for Relief from the Taxes of 1884.)

39  525
123a 380
39  525
81   24
39h 525
57ad111
39h     525
71 AD ²573

*Taxation of shares in national banks — neither the bank nor its receiver can apply for a reduction in the assessment — the assessments can only be reviewed by* certiorari — *the party aggrieved must apply to the assessors for relief before applying to the court.*

On or about January 1, 1884, the commissioners of taxes and assessments of the city of New York assessed the outstanding stock in the Wall Street Bank to the several individual holders thereof at its par value, and assessed thereon to them, respectively, taxes amounting in the aggregate to $6,189.62. On September 15, 1884, judgment was obtained on behalf of the people of the State dissolving said banking corporation, forfeiting its charter and appointing one Osborn receiver of all its goods and property. Thereafter the receiver applied to the court at Special Term, alleging that an examination of the affairs of the bank had shown that the value of the stock had been so impaired by the frauds of the cashier as to make its assessable value not to exceed ten per cent of its par value. After a hearing an order was made reducing the taxes assessed from $6,189.96 to $618.96, directing the receiver to pay that sum to the receiver of taxes in full of all claims against the stockholders for taxes for that year, and that all taxes theretofore collected on such stock should be returned forthwith to the receiver.

*Held,* that the order should be reversed for the reasons:

That neither the receiver nor the bank itself had any interest in the question, as the tax was imposed upon the stockholders personally and not upon the bank or the receiver.

That the stockholders themselves could not have made such an application, as the proceedings of the commissioners of taxes and assessments, being judicial in their nature, could only be reviewed or questioned in the courts by writ of *certiorari* prosecuted by the party aggrieved.

That the failure of the stockholders to appear before the commissioners at the time appointed by law and establish the true value of the stock, or show other good reasons for a reduction of the assessment, concluded them from subsequently reviewing the action of the commissioners by *certiorari* or otherwise.

APPEAL from an order of the Special Term, directing a reduction of the taxes assessed against the stockholders on the capital stock of the Wall Street Bank in the year 1884.

*D. J. Dean,* for the mayor, etc., of New York, appellant.

*E. P. Wheeler,* for the receiver of the bank. respondent.

DAVIS, P. J.:

By section 312 of the banking laws of the State of New York (Laws of 1882, chap. 409, p. 581) it is enacted that " the stockholders in every bank or banking association organized under the authority of this State or of the United States shall be assessed and taxed on the value of their shares of stock therein. Said shares shall be included in the valuation of the personal property of such stockholders in the assessment of taxes at the place, city, town or ward where such bank or banking association is located, and not elsewhere, whether the said stockholders reside in said place, city, town or ward or not; but in the assessment of said shares each stockholder shall be allowed all the deductions and exceptions allowed by law in assessing the value of other taxable personal property, owned by individual citizens of this State, and the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this State." That section also contains other provisions relative to ascertaining the value of the stock so taxed and the notice required to be given of the assessment. And sections 314 and 315 make provisions for the mode of collecting said taxes when the person assessed does not reside in the town, ward or county in which the assessment is made, and imposes the duty on the bank, in prescribed cases, to retain any dividend or dividends belonging to the stockholders assessed as shall be necessary to pay his taxes until it shall be made to appear that such taxes have been paid. From these several and other provisions of the Code, it is apparent that the taxes upon the stock are imposed altogether upon the individual stockholders, and that the bank has no other legal interest therein or duty in respect thereto than those prescribed and pointed out by the several provisions of the act. The commissioners of taxes and assessments of the city of New York assessed the outstanding stock in said bank to the several individual holders thereof at its par value, and assessed thereon to them respectively taxes amounting in the aggregate to $6,189.62, on or about the 1st of January, 1884. The bank was then in full operation and no steps appear to have been taken by the several stockholders, or any of them, or any person on their behalf, for the purpose of reducing or otherwise affecting such assessments and taxes. On the 15th of September, 1884, judgment was obtained on behalf of the people of

the State, dissolving the corporation of said bank, forfeiting its franchises and appointing the petitioner Charles J. Osborn receiver of all its goods, property and effects, and the petitioner duly qualified and entered upon the discharge of his duties as such receiver.

It was afterwards, as alleged by the petition in this case, discovered by the receiver on an examination of the affairs of the bank that by reason of frauds of its cashier the value of the stock had been greatly impaired, and was in fact so much impaired at the time the assessment was made and the taxes imposed on the stockholders, that in the opinion of the accountant who made the investigation the real assessable value of the stock does not exceed ten per cent of its par value.

Upon this state of facts the receiver, by his petition, made application to the court at Special Term for an order reducing the assessment and the taxes imposed upon the stockholders from $6,189.62 to $618.96. The petition came to a hearing in April, 1885, before Mr. Justice DONOHUE, at Special Term, and an order was made directing that the taxes assessed upon such stockholders be reduced from the sum of $6,189.62 to $618.96, and " that Charles J. Osborn, the receiver of the Wall Street Bank, do pay that sum to the receiver of taxes in full satisfaction of all claims against the stockholders of the said bank for all taxes for the year 1884 upon its capital or surplus, or upon their shares of its capital stock, and that all taxes on such stock which may have been heretofore collected from the holders of any of the said stock, be returned forthwith to the said receiver." From this order the mayor, aldermen and commonalty of the city of New York bring this appeal.

We are not able to discover any authority or principle of law upon which the order made in this case can be sustained. Neither the bank nor the receiver is aggrieved or injured by the assessment and imposition of the tax upon the several stockholders of the bank on their respective shares. Neither of them has any legal interest in the question, and the petition fails to show any right of the receiver to institute any proceedings to reduce such taxes and assessments. The shares of stock shown by the petition to have been assessed to their respective owners upon which the taxes have been laid, were not owned by the bank at the time of the assessment, nor afterwards, and no interest whatever therein became

vested in the receiver on his appointment. On the contrary, they remained the property of the respective holders upon whom the taxes were imposed, and from whom they are by law to be collected by some one or other of the processes provided by law. No facts appear tending to show that the bank was liable, directly or indirectly, for their payment, or that the receiver can in his official capacity be charged therewith or disturbed in his possession of any fund or property now in his hands. It is not shown that any dividend had been declared on the stock which the bank or the receiver is bound to retain or apply thereon. In short not a single fact alleged in the petition tends to show that the bank or the receiver, or the property in his hands, can be in any way affected by the reduction of the assessment and taxes. Under such circumstances there was no warrant for an order of the court directing the receiver to pay out of funds in his hands the reduced tax or any tax, and especially none directing the appellant to repay to the receiver the amount of any taxes that may have been paid by the stockholders. These reasons alone are entirely sufficient to require this court to reverse the order of the Special Term. But if they were for any reason unfounded, there are still other grounds upon which the order must be vacated. The parties who were or are aggrieved and entitled to question the assessment were the stockholders themselves who had been assessed individually and who alone could suffer any injury by reason of the assessment. Their respective rights are fully protected by law and on their application, if made to the commissioners in due time, the assessments could have been readjusted and reduced in accordance with the provisions of the statutes or by proper proceedings for their revaluation by writ of *certiorari*. The law is thoroughly well settled in this State that the proceedings of the commissioners of taxes and assessments in making assessments for the purposes of taxation, and of the city authorities in levying taxes based on such assessment, are judicial in their nature and can only be reviewed or questioned in the courts by writ of *certiorari* prosecuted by the parties aggrieved or affected. (*Vose* v. *Willard*, 47 Barb., 320 ; *Genessee Valley Nat. Bank* v. *Supervisors*, 53 id., 223 ; *Barhyte* v. *Sheppard*, 35 N. Y., 238 ; *Swift* v. *City of Poughkeepsie*, 37 id., 513 ; *Bank of Commonwealth* v. *Mayor*, 43 id., 184 ; *Buffalo and State Line Railroad* v. *Board of Supervisors*, 48 id., 99, 100.)

But in respect of such aggrieved party there is no authority or practice that permits the institution of a summary proceeding by motion to a court for the purpose of reducing taxes and the assessments upon which they are based, made by the properly authorized assessing officers. If such a proceeding were sanctioned it would result in bringing before the courts by petition and special motion interminable litigations over assessments of every person who felt himself aggrieved, for the purpose of trying the question whether or not the particular property taxed was over-valued by the assessors and for the purpose of reducing the taxes as he might show to be just or equitable. Such a system would overturn the scheme of assessment and taxation created by the laws and lead to inextricable confusion and embarrassment in the administration and enforcement of those laws. Fortunately the courts are clothed with no such power and can only exercise it by usurping the functions of other authorities created by law for the purpose of such review.

The assessed stockholders in this case had ample opportunity to make their application to that tribunal as provided by statute, and on showing the true value of the stock or any other good reason to have had the assessments reduced accordingly. Their failure to do this is conclusive against them and against all parties. The proceedings for that purpose, so far as this city is concerned, are con trolled by statute. (See Consolidation Act, chap. 410 of 1882, §§ 817, 822; Laws of 1859, chap. 302; Laws of 1880, chap. 269; Laws of 1867, chap. 410, § 4.) Where a person taxed has failed to avail himself of these opportunities he cannot subsequently ask to have his taxes reduced. This proposition is abundantly supported by authority. (*Smith* v. *International Ins. Co.*, 35 How. Pr., 126; *Matter of McMahon, receiver,* v. *Fowler Bros.*, 66 id., 190; *McMahon, receiver,* v. *Jones & Fairchild,* 1 How. Pr. [N. S.], 271; *Ontario Bank* v. *Bunnell,* 10 Wend., 195; *Boyd* v. *Gray,* 34 How. Pr., 323; *Genesee Valley Nat. Bank* v. *Supervisors,* 53 Barb., 223; *Bank of Commonwealth* v. *The Mayor,* 43 N. Y., 184; *People ex rel. Coudert* v. *Tax Commissioners,* 31 Hun, 235.)

And it is now settled by the court of last resort in the *People ex rel. Mutual Union Telegraph Company* v. *The Commissioners of Taxes* (99 N. Y., 254), that a writ of *certiorari* will not lie unless the party applying therefor has first made the application provided

by the statute for relief. In the case just cited the Court of Appeals say: "The case made by the relator does not entitle it to relief under chapter 269 of the Laws of 1880. The assessment was regular. The relator did not avail itself of the opportunity to apply for a correction of the assessment, either on the ground of over-valuation or of irregularity. The act of 1880 gives a remedy by *certiorari* to review and correct an illegal, excessive or unequal assessment. But it would, we think, be an unwarrantable construction of the statute to permit a party complaining of an assessment, to lie by, without availing himself of the opportunity to remedy his grievance by application to the tax commissioners, under the statute of 1859, and after the assessment had become confirmed by lapse of time, to arrest the collection of the tax by a proceeding under the act of 1880. There is an apparent injustice in compelling the relator to pay a tax on its whole capital, but it is an injustice brought about by its own negligence; first, in omitting to make a report in compliance with the statute, and then in neglecting to apply to the tax commissioners within the time limited for a correction of the assessment."

In the present case no application whatever is shown to have been made by any one to the tax commissioners for a reduction of the assessment. The equities of the application, so far as the individual stockholders are concerned, rest upon the subsequent development of facts affecting the value of the stock. It is not the fault of the people that those facts were not sooner known and their injurious consequences must fall upon the stockholders of the bank, because under the circumstances no remedy against them can be successfully pursued.

The order of the court below must be reversed, with ten dollars costs and disbursements to be paid by the receiver.

BRADY and DANIELS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements to be paid by receiver.